# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia,             :
           Petitioner   :
                             :   No.  1056 C.D. 2025
                             :
           v.             :
                             :   Argued:  May 12, 2026
Board of Trustees of the Pennsylvania  :
Opioid Misuse and Addiction        :
Abatement Trust,                :
           Respondent   :

BEFORE:   HONORABLE LORI A. DUMAS, Judge
              HONORABLE STACY WALLACE, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

***OPINION NOT REPORTED***

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                                       **FILED:  July 15, 2026**

The City of Philadelphia (City) has filed a petition for specialized review, asserting that the Board of Trustees (Board) of the Pennsylvania Opioid Misuse and Addiction Abatement Trust (Trust) should have approved its expenditure of Trust funds for two sub-programs within the Kensington Resident Support Fund (Program 9).  Having reviewed the record submitted to this Court and upon consideration of the City's arguments and the Board's responses thereto, we conclude that the Board's decision is deficient in that it lacks several characteristics of a reasoned decision suitable for appellate review.  Therefore, we remand to the Board with instructions that it issue an appropriate decision within 30 days.

# I. BACKGROUND[1]

## A. Trust

In 2022, the Commonwealth of Pennsylvania sued various pharmaceutical manufacturers and distributors of prescription opioids. The parties settled for approximately $1 billion. Pursuant to the terms of a consent judgment entered and approved by this Court, the Commonwealth created the Trust to receive, allocate, and disburse the settlement funds.

The Trust may approve the distribution of funds "only for the purposes set forth in Exhibit E to the Settlements." Am. Order, 10/15/24, § V(B).[2] Exhibit E is a 15-page list of approved programs and strategies addressing opioid addiction, divided into two schedules. The first schedule highlights and gives priority to core abatement strategies. Ex. E, Sch. A. The second schedule provides a non-exhaustive list of treatment and prevention efforts, as well as outlining other strategies to abate the opioid epidemic. Ex. E, Sch. B.

Each year, the Trust disburses funds to counties and other participating subdivisions, which are required to expend those funds timely and in compliance with Exhibit E. Am. Order §§ III(K), V(D)(10), VII. Each county is required to submit an annual report detailing the expenditures of such funds to the Trust.[3] *Id.* § V(D)(11). The Board conducts a retrospective review of the expenditures to ensure the spending has been consistent with Exhibit E.[4] *Id.* §§ V(B), VI(A)(3). If a county fails to file a report or if the Board otherwise determines that funds have been

---

[1] We glean the facts from the record.

[2] For convenience, we refer to the amended order that created the trust.

[3] It appears a county is responsible for submitting annual reports on behalf of participating subdivisions within its jurisdiction. Am. Order §§ V(D)(11), VII(A).

[4] It is unclear why the parties negotiated to permit expenditure of Trust funds before the Board approves the expenditure.

2

expended inconsistently with Exhibit E, then the Board "may withhold the next year's payments." *Id.* § X(C)(1).

A county or other participating subdivision can challenge the Board's decisions regarding compliance with Exhibit E in one of two ways. First, any "beneficiary of the Trust may petition the Court to allow spending on an item of abatement not contained in Exhibit E, provided such spending is deemed by the Court to reduce incidence or rate of opioid addiction and overdose deaths in the Commonwealth." *Id.* § VIII(F). Second, any "beneficiary of the Trust may file a complaint with the Board of Trustees if the beneficiary disputes an action by the Trust with regard to that beneficiary, provided that such complaint is filed within 30 days of when the beneficiary knew or should have known of the basis for the complaint." *Id.* § VIII(G).[5] "If the Board of Trustees' response does not resolve the beneficiary's complaint, the beneficiary may petition this Court for a resolution of its complaint." *Id.* § VIII(G)(2).

Per the Order, "the Trust is not a Commonwealth" agency, a local agency, a judicial agency, or a legislative agency. *Id.* § III(Q). This Court, however, retains jurisdiction over the Trust until its dissolution. *Id.* § VII(E). The participating subdivisions have agreed to this Court's jurisdiction and "have standing to petition this Court for enforcement of this Order and payment of the [funds] allocated to it." *Id.* § II(B). In July 2025, this Court further clarified its role by issuing a case management order (CMO), which directed Trust beneficiaries seeking relief under

---

[5] The Board is responsible for establishing its own operating rules and procedures. Am. Order § VI(A)(5). To manage volume, the Board created three working groups to review county submissions and make recommendations, and it established a seven-member Dispute Resolution Committee (DRC) to hear beneficiary complaints under § VIII(G) at public meetings. To address disputes, the Board has adopted a multi-level review process, first by a working group, then the complete Board, and finally the dispute resolution committee (DRC). For ease, we may refer to DRC decisions as the Board's decisions.

3

Section VIII(G)(2) to file a "petition for specialized review," which is governed by Chapter 16 of the Pennsylvania Rules of Appellate Procedure and addressed to this Court's appellate jurisdiction. *See* CMO, *Commonwealth v. Johnson & Johnson* (Pa. Cmwlth., Nos. 243-244 M.D. 2022, filed July 22, 2025).

### B. The City's Program

Program 9 is intended "to lower the risk of opioid use disorder and overdose and mitigate the effects of the opioid epidemic in Kensington by addressing root causes of addiction in a high risk area." Pet. for Specialized Rev., 8/21/25, at 8. It consists of several subprograms targeting home repair, rent/mortgage relief, safety improvements to parks and schools, and small business assistance. *Id.*

Initially, the Board deemed the entirety of Program 9 to be non-compliant with Exhibit E because the City "did not establish any connection between the program and those with opioid use disorder or who are at risk of developing opioid use disorder. Instead, this program appears to support general community development." *Id.* at 12 (quoting Bd.'s Initial Decision, 7/10/24, at 1) (cleaned up). The City promptly filed a complaint and thereafter presented support for Program 9 to the DRC. *See generally* Tr., 10/3/24. Ultimately, the Board approved rent/mortgage relief and parks/school improvements but disapproved the home repairs and small business support subprograms. *See* Bd.'s Final Decision, 10/7/24.

The City filed a petition for specialized review in this Court, seeking relief pursuant to Sections VIII(F) or VIII(G)(2) of the Order. *See* Pet. for Specialized Rev. at 17. The Board filed an answer in opposition, and the parties have filed Court-ordered briefs.

4

## II. ISSUE

The City contends that the Board erred in concluding that certain subprograms in Program 9, providing home repairs and small business support, are non-complaint with Exhibit E. Pet. for Specialized Rev. at 14-15.

## III. DISCUSSION

### A. Arguments

The City argues that Program 9 complies with Exhibit E because it targets the root causes of addiction and employs evidence-informed strategies proven to lower the risk of opioid use disorder (OUD) and overdose. City's Br. at 13. In the City's view, the Board has adopted an impermissibly narrow reading of Exhibit E. *See id.* at 24-29. Rather, the City maintains, Exhibit E provides a non-exhaustive list of programs and strategies, and the Board should defer to the judgment of counties, unless their spending is "unrelated to opioid use disorder, co-occurring substance use disorder or mental health, overdose, or mitigating the effects of the opioid epidemic."[6] *Id.* at 29.

In response, the Board summarizes Program 9 as an effort to improve the local environment and reduce instances of crime and disorder. *See* Bd.'s Br. at 17. However, in its view, while this may be laudable, the national settlements "do not contemplate or permit beneficiaries to expend opioid settlement funds on such general community development programs." *Id.* The Board is particularly critical that the City has not funded programs "specifically tailored to address OUD . . . ." *Id.* Instead, according to the Board, the City seeks "to address 'increased rates of stress, mental health concerns, gun violence, and homicide' . . . in the attenuated hope that such community development will ultimate[ly] reduce the incidence of

---

[6] The City has offered no alternative arguments in support of its request for relief pursuant to Section VIII(F). *See generally* Pet. for Specialized Rev.; City's Br.

OUD" because the overall environment in Kensington will improve.[7]  *Id.* at 17-18 (quoting City's Br. at 22).

*B. Disposition*

Generally, this Court has the power to issue an order "as the interest of justice . . . may require."  42 Pa.C.S. §§ 323, 562.  We may also "remand the matter and direct the entry of such appropriate order, or require such further proceedings to be had as may be just under the circumstances."  *Id.* § 706.  For example, this Court remanded for a Pa.R.A.P. 1925(a) decision because the trial court's order and record did not reveal the underlying reasoning.  *Artisan Const. Grp. v. Zoning Hearing Bd. of Upper Pottsgrove Twp.*, 275 A.3d 80, 84 (Pa. Cmwlth. 2022) (*Artisan*).

Instantly, the Board's October 7, 2024 email does not reveal the underlying reasoning for why the program fell outside Exhibit E.  *Cf. id.*  Under these circumstances, to provide a just "resolution of [Petitioner's] complaint," Am. Trust Order, § VIII(G)(2), we must remand to have the Board file an appropriate decision explaining its reasoning.  *See* 42 Pa.C.S. §§ 323, 562, 706; *cf.* Pa.R.A.P. 1925(a); *Artisan*, 275 A.3d at 84.  Without the Board's decision explaining its reasoning, we cannot conduct any appellate review.  *See* Pa.R.A.P. 1601; *cf. Artisan*, 275 A.3d at 84.

The Board's decision must identify the Exhibit E Section(s) at issue and explain why the disputed program does not qualify.  The Board must provide specific findings that are relevant to its decision, with appropriate citations to the record that facilitate our review, and its decision must also reflect any credibility determinations that inform those findings.  To the extent the Board relies on undefined terms or apparent terms of art, *e.g.*, "evidence-based" or "evidence-informed," to justify its

---

[7] Applying this logic, it is unclear why the Board approved any of the subprograms.

6

decision, the Board must define those terms. In sum, the Board's decision must provide sufficient factual detail and reasoning that would permit this Court to exercise its appellate role in reviewing the Board's denial under Exhibit E.

## IV. CONCLUSION

For these reasons, we require the Board to thoroughly memorialize its reasoning before we can address our standard and scope of review and evaluate the Board's review of the City's expenditure of Trust funds. *See* 42 Pa.C.S. § 706. Accordingly, we remand to have the Board file a decision within 30 days, as set forth herein.

**LORI A. DUMAS, Judge**

Judge Covey did not participate in this decision.

7

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia,           :
           Petitioner        :
                           :   No. 1056 C.D. 2025
            v.               :
                           :
Board of Trustees of the Pennsylvania  :
Opioid Misuse and Addiction      :
Abatement Trust,                :
           Respondent     :

# O R D E R

AND NOW, this 15th day of July, 2026, we REMAND to have the Board of Trustees of the Pennsylvania Opioid Misuse and Addiction Abatement Trust (Board) file a decision explaining its reasoning within 30 days. The Board's decision must identify the Exhibit E Section(s) at issue and explain why the disputed programs do not qualify. The Board's decision must include specific findings of fact and reflect its credibility determinations. To the extent the Board relies on undefined terms or apparent terms of art, *e.g.*, "evidence-based" or "evidence-informed," to justify its decision, the Board must define those terms. We ORDER the Prothonotary to serve a copy of this opinion and order on the Attorney General.

Jurisdiction retained.

 

 

**LORI A. DUMAS, Judge**